FILED

08 AUG 18 PM 4: 11

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

Joseph N. Casas (SBN 225800)
Tamara M. Craft  (SBN 234419)
J. Scott Schaller  (SBN 201622)
CASAS LAW GROUP, P.C.
2323 Broadway, Suite 202
San Diego, CA  92102
Phone: (619) 692-3146
Facsimile: (619) 692-3196
Email: joseph@casaslaw.com

Attorneys For Plaintiff
Allison J. Dernbach

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

ALLISON J. DERNBACH, an individual,

PLAINTIFF,

vs.

CHEROKEE MEDICAL SERVICES LLC,
an Oklahoma Limited Liability Company,
DEPARTMENT OF THE UNITED
STATES NAVY,  THE HONORABLE
ROBERT M. GATES, Secretary of U.S.
Department of Defense, THE
HONORABLE DONALD C. WINTER,
Secretary of the U.S. NAVY,
LIEUTENANT  MUHAMMED A.
OZEROGLU an individual, and DOES 1
Through 10 Inclusive,

DEFENDANTS.

'08 CV 1517 L POR

COMPLAINT FOR:

1.    Sex  Discrimination,
2.    Sex  Discrimination – FEHA,
3.    Sexual Harassment,
4.    Sexual Harassment – FEHA,
5.    Intentional Infliction Of Emotional
       Distress,
6.    Negligent Supervision,
7.    Wrongful Termination in Violation of
       Public Policy.

///
///
///
///

1
Complaint

Plaintiff, Allison J. Dernbach ("Plaintiff" or "Dernbach") alleges as follows:

1.     This suit is brought pursuant to Title VII of the 1964 Civil Rights Act as amended and codified at 42 U.S.C. §2000e *et. seq.* ("Title VII"), the Americans with Disabilities Act ("ADA") of 1990 42 U.S.C. §12101 *et. seq.*, 42 U.S.C. §1981a and under 32 C.F.R. 700.1166. Allegations also arise under the California Fair Employment and Housing Act ("FEHA") codified under California Government Code §12900 *et seq.*

## JURISDICTION AND VENUE

2.     Original jurisdiction is invoked pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. 1346(b) (jurisdiction where United States is defendant.)

3.     Supplemental jurisdiction of this Court is invoked with respect to the pendent State claims pursuant to 28 U.S.C. §1367(a) on the grounds that they are so related to the claim within this Court's original jurisdiction as to form part of the same case or controversy. This Court has pendent jurisdiction over the state law claims which, together with those arising under the laws of the United States, have a common nucleus of operative facts and constitute a single case or controversy in accordance with *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

4.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) and 28 U.S.C. §1402(b) of the United States Code because the Southern District of California is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

5.     Dernbach has exhausted her administrative remedy requirements under Title VII, the ADA, and the FEHA. The EEOC and the DFEH have issued their respective Letters of Right to Sue to Dernbach. Dernbach has timely filed this complaint.

///
///
///
///
///
///

CASASLAWGROUP

6.    On or about March 19, 2008, Plaintiff completed the EEOC Intake Questionnaire and filed her complaint against Cherokee Medical Services and the Naval Medical Center San Diego.  Pursuant to requests from the EEOC, Plaintiff resubmitted her Intake Questionnaire on or about April 4, 2008.  On or about May 16, 2008 the EEOC issued its "Notice of Right to Sue" letter which was received by Plaintiff's representative on or about May 19, 2008.  (A true and correct copy of the Right to Sue letter from the EEOC dated May 16, 2008 is attached hereto as **Exhibit "1"** and incorporated by reference.)

7.    On or about May 9, 2008, Plaintiff filed her complaint with the Department of Fair Employment and Housing (DFEH) which issued their Notice to Complainant of Right-To-Sue on May 16, 2008.  (A true and correct copy of the Notice to Complainant of Right-to-Sue letter from the DFEH dated May 16, 2008 is attached hereto as **Exhibit "2"** and incorporated by reference.)

8.    Defendants and their officers and managers are, and were at all times herein pertinent, acting within the scope of their employment within the meaning of 7 U.S.C. §4 and the common law of the State of California.

## **PARTIES**

9.    Plaintiff, Allison Dernbach, is a Forty (40) year-old woman, currently and at all times relevant, a resident of San Diego County, State of California.  Dernbach is a United States citizen and was a Canadian citizen when the events and actions giving rise to this Complaint occurred.  Dernbach is a radiation therapist; she performs oncology services for cancer stricken patients.  Defendant Cherokee Medical Services, LLC employed Dernbach to perform radiation therapy services on a contract basis.  In July 2004, Dernbach was contracted by CMS to the United States Navy to work as a contract radiation therapist at the Naval Medical Center in San Diego, California (hereinafter "NMCSD").

10.    On information and belief, defendant Cherokee Medical Services, LLC (hereinafter "CMS") is an Oklahoma Domestic Limited Liability Company and maintains its main office at 18945 FM 2252, Suite 115, Garden Ridge, Texas.  CMS maintains a satellite office at Naval Medical Center San Diego.  CMS is an employment agency that employs approximately 700 professionals including physicians, pharmacists, dentists and engineers along with ancillary

CASASLAWGROUP

1  personnel including nurses, lab technicians, dental hygienists, engineering technicians and many

2  other specialists.  CMS provides medical personnel services to the U.S. Military Services,

3  including the United States Navy, in Twenty Seven (27) states including California.  CMS

4  provides medical personnel services to NMCSD.

5        11.    Defendant United States Navy ("Navy") is a branch of the United States Armed

6  Forces and a department of the United States government.  The Naval Medical Center San Diego

7  is a naval hospital in San Diego, California that is part of the Navy.

8        12.    Defendant Robert M. Gates is the Secretary of Defense and maintains his principal

9  place of business in the Pentagon building in Washington D.C.  Defendant Gates is named here in

10  his official capacity as he has ultimate responsibility for the regulations that govern military

11  service for all citizens in all branches of the armed forces; and for ensuring the legality of all

12  military policies and procedures as well as for the promulgation and implementation of all related

13  regulations and procedures.

14        13.    Defendant Donald C. Winter is the Secretary of the Navy and maintains his

15  principal place of business in the Pentagon building in Washington D.C.  Defendant Winter is

16  named here in his official capacity as he has ultimate responsibility for the Navy and for the

17  conditions, terms and procedures that governed Plaintiff's employment with the Navy.

18        14.    Defendant Lieutenant Muhammed A. Ozeroglu ("Lt. Ozeroglu") is, and at all

19  times relevant to this action was, a Naval officer who was Plaintiff's direct supervisor at NMCSD

20  from July 2004 through July 25, 2007 despite direct orders from the Navy to the contrary.  Lt.

21  Ozerglu was initially stationed in the Radiation Therapy Oncology and Physics Department ("RT

22  Department") to receive training.

23        15.    Plaintiff is unaware of the true names and capacities of Defendants sued herein as

24  Does 1 through 10, inclusive, and therefore sues such Defendants by said fictitious names.

25  Plaintiff is informed and believes and thereon alleges, that Does 1 through 10 inclusive, and each

26  of them, are in some manner liable to Plaintiff.  Plaintiff will seek leave of Court to amend this

27  Complaint to allege their true names and capacities when they have been ascertained.

28  ///

CASASLAWGROUP

16.    Plaintiff is informed and believes, and thereon alleges, that each defendant was the agent, servant, partner, joint venture, or employee of the other Defendants and was acting within the course and scope of such agency, partnership, venture, or employment, with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged herein at all times relevant to this action.

**GENERAL ALLEGATIONS**

17.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 16 above as though set forth fully below.

18.    On or about April 1999 to November 2002, Dernbach was employed as a radiation therapist, by various contractors, to work in the RT Department at NMCSD. Dernbach left NMCSD on maternity leave and returned approximately eighteen (18) months later, on or about July 2004, as a CMS contract employee in the RT Department at NMCSD.

19.    At all relevant times, the RT Department at NMCSD consisted of five (5) radiation therapists, including Plaintiff, one (1) Dosimetrist, and three (3) doctors.

20.    As a radiation therapist, Dernbach performed the setup and precision delivery of radiation treatments to oncology patients, monitored the treatments and potential side effects, and performed quality assurance. Three (3) of the other four (4) radiation therapists in the RT Department performed the same services.

21.    However, one (1) of the radiation therapists in the RT Department was working as a dosimetrist. A dosimetrist's duties differ from those of a radiation therapist and include accommodating the physician(s) prescription using complex treatment planning computer software in order to provide effective and safe radiation therapy for oncology patients. A dosimetrist also requires full-time on the job training. Many individuals attend full-time schooling earning little or no income in order to obtain the necessary training to sit for the Dosimetry exam.

22.    There is a substantial pay differential between a radiation therapist and a dosimetrist. Many dosimetrists earn salaries in excess of $100,000.

///

CASASLAWGROUP

23.    In the RT Department at NMCSD, Jeanette Solis ("Solis") was employed as a radiation therapist. However, the Navy allowed Solis to work and train as a dosimetrist without CMS's knowledge and failed to hire another radiation therapist to take Solis's position. The Navy's decision to allow Solis to work and train as a dosimetrist created tremendous stress in the RT Department because it increased the work load for the four (4) remaining radiation therapists, including Plaintiff.

24.    If Plaintiff had questions or concerns regarding the performance of her duties as a radiation therapist, they were to be directed toward the doctors and supervisors in the RT Department at NMCSD. If Plaintiff had questions or concerns regarding working conditions, those were to be directed to both the Navy and to CMS. If Plaintiff had human resources questions, those were to be directed toward CMS.

25.    Additionally, there were contract supervisors, including Larry Griffith, working at NMCSD apparently there to assist with employment related issues between the contract company and the Navy. However, instead of using the contract supervisors, the Navy allowed Navy personnel to act as contract supervisors for the CMS contract employees.

26.    On or about September 2005, Plaintiff is informed and believes that Regina Almirol ("Almirol"), a radiation therapist in the RT Department, requested leave under the Family Medical Leave Act ("FMLA")[1]. Dr. Thomas S. Chung (Radiation Oncology Division Head) and Dr. Kang, both doctors in the RT Department, denied Almirol's FMLA leave request and threatened Almirol with termination for job abandonment if she took FMLA leave.

27.    Dr. Chung and Dr. Kang's actions toward Almirol caused Plaintiff extreme anxiety about the work environment in the RT Department. Plaintiff became worried about her own job security should the need for FMLA leave, or any other lawful request, arise.

///

///

---

[1] The FMLA states in relevant part under 5 U.S.C. 6382(a)(1) that: an employee shall be entitled to a total of 12 administrative workweeks of leave during any 12-month period for one or more of the following:
(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

CASASLAWGROUP

28.     On or about October 31, 2006 at approximately 4:00 p.m., a patient who required care from a radiation therapist presented to the RT Department.  Plaintiff's shift ended that day at 4:00 p.m.  Solis was working and her shift ended at 4:30 p.m.  Solis was available to provide the patient care and should have been working as a radiation therapist.  However, Solis refused to provide the patient care because she was working and training as a dosimetrist (and preparing for dosimetrist board exams in June 2007).  Because Solis refused to perform her work as a radiation therapist, Plaintiff stayed late to provide the patient care.

29.     The next day, on or about November 1, 2006, Plaintiff attempted to discuss Solis's refusal to work as a radiation therapist with her immediate supervisor, Lt. Ozeroglu.  Lt. Ozerglu informed Plaintiff that Solis would continue to work and train as a dosimetrist and that the remaining four (4) radiation therapists would have to perform Solis's duties including staying late, if necessary.  Lt. Ozerglu's solution was to force Plaintiff and the remaining three (3) members of the RT Department to perform the work of five (5). [2]  Plaintiff attempted to explain to Lt. Ozerglu that his solution created an increased workload which was unrealistic and outside the scope of Plaintiff's contract services as overtime was not authorized by CMS.

30.     Later that day, Plaintiff and Julie Gardner ("Gardner"), another RT Department radiation therapist, were confronted by Dr. Chung in their workspace.  Dr. Chung demanded Plaintiff and Gardner remain confidential regarding Solis working a dosimetrist.  Dr. Chung threatened Plaintiff and Almirol that he was reviewing Plaintiff, Almirol, and Gardner's FMLA requests and stated that "it seems like someone is always on maternity leave here."  He further threatened that "a" radiation therapist position might be in jeopardy in the near future, thus insinuating that Plaintiff, Almirol, or Gardner would be terminated if they discussed Solis's dosimetry training outside of the RT Department.

31.     The following day, on or about November 2, 2006, a meeting was called with Dr. Chung, Lt. Ozeroglu, Plaintiff, Almirol, Gardner and Solis.  Plaintiff, Almirol, and Gardner were
///

[2] Along with Plaintiff, Almirol and Jeanette Solis, the Radiation Therapists in the department also included Julie Gardner, "Gardner" who was another female with small children and Timothy Terry, a male with no children.  Solis had no children.

CASASLAWGROUP

1     further threatened to keep Solis's dosimetry training secret from and that their failure to

2     do so might jeopardize the RT department and their jobs.

3          32.     Based on Dr. Chung's threat, Plaintiff and Gardner did not contact CMS regarding

4     Solis's dosimetrist training for fear of losing their jobs.  Plaintiff, Gardner, and Almirol were the

5     only employees in the department with children and were the only employees that had previously

6     filed requests under the FMLA.  Gardner had just come back from maternity leave two (2) weeks

7     prior, and Almirol was eight (8) months pregnant.

8          33.     Within approximately one week of that meeting, Dr. Chung stepped down as

9     Division Head and Lt. Ozeroglu was appointed Division Head of the RT Department by Dr.

10    Chung.

11          34.     In January 2007, CMS informed Plaintiff she was ineligible to work for the Navy

12    because she was a Canadian citizen.  Lt. Ozeroglu shared this personal information with the

13    engineer who repaired the RT Department's treatment units.  Within hours of hearing about her

14    ineligibility, Plaintiff received a phone call from an individual working at another Radiation

15    Oncology clinic in San Diego regarding the situation with her Canadian citizenship.  Plaintiff's

16    confidential personnel information was being openly shared and disseminated by her supervisor,

17    Lt. Ozeroglu.

18          35.     In February 2007, Lt. Ozerglu threatened Plaintiff that her time was "getting short"

19    because of her citizenship problem.  However, CMS informed Plaintiff that the issue was put on

20    hold.

21          36.     In April 2007, Lt. Ozerglu appointed Petty Officer First-Class ("Hospital

22    Corpsman") Adam Rosendahl ("HM1 Rosendahl") as supervisor and Chief Radiation Therapist

23    of the RT Department. Lt. Ozerglu appointed HM1 Rosendahl knowing HM1 Rosendahl was not

24    a licensed Radiation Therapist and was not a trained CMS Contract Supervisor.  Plaintiff wanted

25    to take the matter to CMS, but again, did not do so for fear of reprisal and/or losing her job all

26    together.

27          37.     On April 25, 2007, a co-worker at NMCSD informed Plaintiff that she heard Lt.

28    Ozeroglu referred to Plaintiff, Gardner and Almirol as "f***ing ho's." Lt. Ozeroglu was heard to

CASASLAWGROUP

1  say: "Those f***ing ho's think they are running the place . . . I'll have them all fired!"  Plaintiff

2  and the other therapists reported this to Dr. Warren Inouye (Chairman of Department of

3  Radiology).  Dr. Inouye discouraged Plaintiff from reporting Lt. Ozerglu's threatening and hostile

4  behavior to CMS and said that he would take care of it.

5        38.    On April 30, 2007, Lt. Ozeroglu was _informally_ reprimanded with a written

6  Resolution of Grievance. Lt. Ozeroglu admits in written form he "made inappropriate comments"

7  in conversation, but he never made such comments directly to the therapists.  According to the

8  resolution, Lt. Ozerglu was asked to apologize to Plaintiff and the therapists and his direct

9  supervisory role with civilian personnel was reduced with no direct involvement in matters

10  involving the contract radiation therapists.  Plaintiff, Almirol, Gardner, Dr. Inouye and Lt.

11  Ozeroglu were all required to sign the letter.  (A true and correct copy of the "Informal

12  Resolution of Grievance" letter of April 30, 2007 is attached hereto as **Exhibit "3"** and is

13  incorporated herein by reference.)  Dr. Inouye took over as director of Radiation Oncology.

14        39.    On or about July 1, 2007, Dr. Inouye left the division to train for deployment to

15  Iraq and Dr. Brian Lawenda became Plaintiff's immediate supervisor.

16        40.    On or about July 7, 2007, Plaintiff requested a change in work hours to permit her

17  to arrive 15 minutes later and leave 15 minutes later to take her daughter to school in the morning.

18  Plaintiff made the request to Dr. Lawenda who said that he would have to "run it by" Lt.

19  Ozeroglu, who was not supposed to have direct involvement in matters involving the contract

20  with the radiation therapists.  Plaintiff was told to let her supervisor know when she would be

21  finding someone else to take her daughter to school.  It was the only response she received on her

22  request.

23        41.    On or about July 9, 2007, Plaintiff, via e-mail to CMS Human Resources Manager,

24  Sy Simmons ("Simmons"), tendered a Two (2) week notice of resignation of her position as

25  Radiation Therapist at NMCSD.

26        42.    On or about July 10, 2007, in a phone call and follow-up e-mail to Simmons,

27  Plaintiff reported a hostile and intolerable work environment.  Plaintiff was asked to rescind her

28  resignation so that CMS could fix the problem.  This was the first time CMS Medical Services

CASASLAWGROUP

1     heard about problems Plaintiff was having with the Navy personnel because Plaintiff was fearful

2     based on the actions of Dr. Chung, Dr. Lawenda, Dr. Inouye, and Lt. Ozerglu. Upon reliance of

3     CMS's assurances they would investigate, Plaintiff agreed to rescind her resignation.

4          43.     On July 10, 2007, Simmons wrote a letter to Plaintiff indicating that CMS would

5     do everything in their power to solve the issue and ensure a comfortable and satisfying work

6     environment for Plaintiff and the other radiation therapists.

7          44.     Also on or about July 10, 2007, the Navy attempted to refuse to accept Plaintiff's

8     rescission of her resignation thereby essentially firing her. However, CMS blocked them from

9     accepting her resignation and Plaintiff was allowed to continue at NMCSD.

10         45.     On July 11, 2007, Simmons assured Plaintiff that CMS was "working

11    expeditiously" on her complaints.

12         46.     On July 12, 2007, Simmons stated to Plaintiff the "validity of (her) claim" would

13    be strengthened once he received further documentation from the other therapists.

14         47.     Also on July 12, 2007, Plaintiff asked for time off during two (2) upcoming work

15    days and submitted a written request to Dr. Lawenda. The approval was never given back to

16    Plaintiff. Instead, it was dropped off with Lt. Ozeroglu, who was out of the office.

17         48.     On July 13, 2007, Plaintiff received an e-mail from Simmons indicating a

18    determination from the contracting officer was expected early the next week and that he was

19    confident Plaintiff would receive a positive outcome. Simmons refused Plaintiff's request to send

20    a CMS investigator to Plaintiff's place of employment to look into her allegations of a hostile

21    work environment.

22         49.     Plaintiff continuously suffered fear at the workplace, an inability to sleep,

23    difficulty eating, and a recurring feeling of becoming physically ill because of the hostile work

24    environment that existed in the RT Department at NMCSD.

25         50.     On July 19, 2007, Plaintiff received an e-mail from Peter Rocha (Simmons's

26    supervisor at CMS) who explained to her that "actions had been taken to resolve (her) dilemma"

27    and that it might take "some time to handle the situation correctly." This e-mail was followed-up

28    ///

Complaint

1    by a phone conversation in which both Rocha and Simmons re-assured her that CMS was

2    committed to resolving the hostile work environment she was experiencing.

3        51.    On July 25, 2007, realizing that the discrimination and hostile work environment

4    against was going to continue, and growing increasingly distressed with the systematic and

5    pervasive discrimination and harassment towards all women with children in the department,

6    Plaintiff resigned her position.

7        52.    On July 26, 2007, Plaintiff received an e-mail from Simmons at CMS stating "I

8    cannot blame you for your decision to put your family and health before your job...We will

9    continue to investigate this situation..."  She was told that CMS was "eagerly anticipating new

10   findings regarding the investigation."  CMS was continuing its investigation with the help of a

11   contract officer.

12       53.    At morning meetings throughout her time at NMCSD, Plaintiff, Almirol and

13   Gardner were repeatedly told that the female therapists with children were calling in sick at "an

14   uncommonly frequent rate" because of their children becoming sick.  Plaintiff, Almirol, and

15   Gardner, the three women (3) therapists with children, also had numerous comments directed at

16   them by their superiors, asking when the "next one would get pregnant" or when the "next one

17   would need FMLA time off."

18       54.    On August 7, 2007, Almirol filed a formal complaint with CMS for sexual

19   discrimination and harassment by the Navy personnel at NMCSD.

20       55.    Plaintiff notified the EEO at NMCSD to add her name to the complaint as well.

21       56.    In August 2007, CMS finally notified the EEO at NMCSD that there was ongoing

22   discrimination within the RT Department.

23       57.    On September 28, 2007, Simmons informed Plaintiff he would no longer talk to

24   Plaintiff about the investigation because she is a "former" employee.

25       58.    Plaintiff has since been informed and herein believes that the hostile work

26   environment persisted until Gardner and Almirol also resigned.

27   ///

28   ///

CASASLAWGROUP

1    59.    Plaintiff is informed and believes that Captain Mark Mennacker, JAG Corps USN,

2    the Staff Judge Advocate for NMCSD, led her to believe for months that the Navy was

3    investigating the allegations and would be providing a response.

4    60.    Plaintiff is informed and believes that the Navy failed to fully and completely

5    investigate the hostile work environment in the RT Department and that no action was taken to

6    remedy it.

7    **FIRST CAUSE OF ACTION**

8    **SEXUAL DISCRIMINATION**

9    **(Against US Navy)**

10    61.    Plaintiff incorporates by this reference each and every allegation contained in

11    paragraphs 1 through 60 above as though set forth fully below.

12    62.    Under Title VII, it shall be an unlawful employment practice for an employer to

13    fail or refuse to hire or to discharge any individual, or otherwise discriminate against any

14    individual with respect to his compensation, terms, conditions, or privileges of employment,

15    because of such individual's sex . . . (42 U.S.C. 2000e-2.)

16    63.    The Pregnancy Discrimination Act amended Title VII by stating that the terms

17    "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis

18    of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy,

19    childbirth, or related medical conditions shall be treated the same for all employment-related

20    purposes, including receipt of benefits under fringe benefit programs, as other persons not so

21    affected but similar in their ability or inability to work, and nothing in section 2000e-2 (h) of this

22    title shall be interpreted to permit otherwise. (42 U.S.C. 2000e(k)).

23    64.    Supervisor Lt. Ozeroglu expressly stated he wanted the women in his department

24    fired and Plaintiff was repeatedly threatened with job termination during the entire course of her

25    employment, and ultimately, these intentional acts and the intolerable discriminatory policy

26    toward Plaintiff, led to her constructive discharge and her resignation as a Radiation Therapist.

27    ///

28    ///

CASASLAWGROUP

Complaint

65.    As set forth above, the U.S. Navy and Lt. Ozeroglu engaged in a repeated policy of sexual discrimination against the plaintiff because of her status as a female and as a mother. Plaintiff and the other two similarly classified therapists endured disparate treatment as they were repeatedly asked to cover the work of the other non-similarly classified female therapists without children simply because they had previously taken maternity leave or raised child care-giving issues. Females with young children were viewed by the superiors in the department as a liability and "difficult to work worth," not worthy of promotion as other employees. Solis was given preferential treatment and the unique path to promotion based solely on the fact that she was not a mother and had never submitted a FMLA request.

66.    Plaintiff is informed and herein believes that Solis, the only other female employee in the department did not have any children. She was given preferential disparate treatment (often to the detriment of the other therapists), which included the ability to set her own work schedules, break and lunch schedules, and vacation schedules; receive on-the-job training for the Dosimetrist position despite her classification by CMS as a Radiation Therapist; receive on-the-job time to study and prepare for taking the boards for the Dosimetrist position; and not having to perform any Radiation Therapist duties which were then covered by the remaining Four Radiation Therapists.

67.    The Three (3) women with children were also subjected to disparate treatment through increased supervision and scrutiny by Lt. Ozeroglu and the other Navy supervisory personnel in the division. The only reason for such treatment was because of their gender and the department's belief that somehow, women with young children were not as committed to their jobs or that they would not be able to perform their duties due to family demands.

68.    Plaintiff, Almirol, and Gardner were also continuously subjected to repeated threats of termination by their supervisors because of their prior requests for maternity and family leave and because of the possibility the women might become pregnant in the future or that they might need additional childcare accommodations. The complaints about these threats were routinely ignored, dismissed, resulted in little if any action taken, and often times, the women suffered retaliation or further threats of termination. The threats continued because the

CASASLAWGROUP

1    women became fearful of losing their jobs and therefore, they endured the comments until

2    Plaintiff eventually, resigned her position.

3         69.    Lt. Ozeroglu also sexually discriminated against Plaintiff when he, as her

4    supervisor, referred to her as a "f***ing ho" in conversation around her place of employment.

5         70.    Plaintiff is informed and herein believes that Lt. Ozeroglu had a prior history of

6    sexual discrimination, misconduct toward women employees and prior reprimands for such

7    conduct, yet he was allowed to ascend to, and to continue in, a position of supervision of female

8    employees and female employees with children.

9         71.    Plaintiff's first available recourse was to report the sexual discrimination to her

10   superiors in the department, but this did nothing to change the blatant and overt discrimination

11   and in fact, Plaintiff encountered additional discrimination and retaliation from the very people

12   who should have been trying to protect her.  She was threatened with termination by Dr. Chung,

13   and given lip service to her complaints by Dr. Inouye which resulted in no change in personnel or

14   resolution of the problems faced by Plaintiff.  Plaintiff was repeatedly told not to contact anyone

15   outside the department or anyone at CMS to report her complaints.  Lt. Ozeroglu was still

16   reviewing all schedule and time-off requests at the time of Plaintiff's resignation despite repeated

17   assurances by Dr. Inouye that Lt. Ozeroglu would be removed from his supervisory capacity.

18        72.    Because Plaintiff was unable to tolerate the sex-based discriminatory practices of

19   Lt. Ozeroglu and the Navy, and the lack of change or likelihood of change in the Navy's position,

20   Plaintiff was left with no alternative but to resign her position of employment with CMS.

21        73.    Defendants Navy and Lt. Ozeroglu have discriminated against Plaintiff because of

22   her sex and therefore, both have violated Title VII of the Civil Rights Act of 1964 as amended.

23   Lt. Ozeroglu's acts are imputed to the US Navy through the doctrine of Respondeat Superior.

24        74.    As a direct and proximate result of the US Navy's violation of Title VII, Plaintiff

25   has suffered damages in the form of lost wages and other employment benefits, along with severe

26   emotional and physical distress in an amount to be shown at trial.

27   ///

28   ///

75.     Under 42 U.S.C. 1981a, a complaining party under the Civil Rights Act of 1964 against a respondent who engaged in unlawful intentional discrimination may recover compensatory and punitive damages.  For such unlawful and intentional acts as described above, Plaintiff seeks recovery of these damages as well.

76.     Plaintiff has been compelled to engage the law firm of Casas Law Group, P.C. to enforce her rights and to prosecute the instant action.  Pursuant to the Title VII, Plaintiff is entitled to compensation of her reasonable attorney fees and costs in an amount according to proof.

## SECOND CAUSE OF ACTION

## SEXUAL DISCRIMINATION

### (Against CMS)

77.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 76 above as though set forth fully below.

78.     On July 10, 2007, Plaintiff informed Simmons at CMS about the discrimination she was experiencing at the NMCSD.

79.     Simmons told her that an investigation would be conducted and she was repeatedly told by Simmons that the investigation was continuing.

80.     Plaintiff rescinded her resignation after being told by Simmons that he would take care of the problem and would conduct a thorough investigation; meanwhile, Plaintiff was forced to subject herself to the continued discriminatory actions of Lt. Ozeroglu and the Navy personnel in the RT Department at NMCSD.  After two additional weeks of this, with no progress made by Simmons in his investigation and her health becoming worse, Plaintiff again resigned her position.

81.     On September 28, 2007, Simmons told Plaintiff that he could no longer talk to Plaintiff about the investigation because she was a "former" employee despite giving her repeated assurances over the past Three (3) months that he would take care of the problem.

///

///

CASASLAWGROUP

82.    To date, Plaintiff has not received a report or notice of completion of Simmons' "investigation" into Plaintiff's allegations.  Since Plaintiff's notification to Simmons on July 10, 2007, Gardner and Almirol have both resigned their positions with the department.  CMS did nothing but allow the discriminatory practices of the US Navy towards its employees at NMCSD Radiology Department to continue unchecked and acted with great and total indifference to CMS' employee's complaints of sexual discrimination.

83.    Defendant CMS was given an opportunity on July 10, 2007 to investigate, notify the offending parties and ultimately to institute personnel changes when Dernbach informed Simmons at CMS of her problems at NMCSD.  Along with that opportunity was the responsibility to their employee that CMS protect Plaintiff from any further acts of discrimination, or that it at least attempt to do so.  CMS failed Dernbach.  Simmons refused to send a CMS employee to investigate on behalf of CMS and instead, told Dernbach that he had permitted the very people who were committing the offenses to self-investigate.  Whether any investigation was ever initiated by CMS or the Navy remains unclear to Plaintiff.  Despite Plaintiff's request to Simmons to save her job, all she got in response was an additional Two (2) weeks of discrimination before she was forced to resign; a resignation due not only to the Navy's sexual discrimination but also due to CMS's failure to prevent that discrimination.  Since she was still a CMS employee, Dernbach asked Simmons to reinstate her to her position once the discrimination issue was thoroughly investigated and resolved and Simmons agreed.  That reinstatement never occurred.

84.    As a direct and proximate result of CMS's willful failure to investigate and prevent the US Navy's repeated violation of Title VII's prohibition against employment discrimination based upon sex, Plaintiff has suffered damages in the form of lost wages (back pay) and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.  In addition to back pay and compensatory damages, Plaintiff also seeks punitive damages for the reckless indifference and wanton disregard for Plaintiff's federally protected rights shown by CMS.

///

CASASLAWGROUP

85.     Plaintiff has been compelled to engage the law firm of Casas Law Group P.C. to enforce her rights and to prosecute the instant action.  Pursuant to the Title VII, Plaintiff is entitled to compensation of her reasonable attorney fees and costs in an amount according to proof.

### THIRD CAUSE OF ACTION

### SEXUAL DISCRIMINATION – FEHA

### (Against US Navy and CMS)

86.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 85 above as though set forth fully below.

87.     The California state legislature passed the California Fair Employment and Housing Act (FEHA) which prohibits employment discrimination on various grounds, including sex.  The FEHA was codified under Government Code sections 12900 et seq.  In pertinent part, section 12940 (a) states that:  "It is unlawful employment practice for an employer because of sex, to bar or discharge the person from employment or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

88.     In March 2008, Plaintiff filed her claim with the Department of Fair Employment and Housing to allege discrimination, harassment, and denial of accommodation on the basis of her sex and maternal status.  She has exhausted her administrative remedies.

89.     Plaintiff is informed and herein alleges that Defendants also violated California State law allowing sex discrimination as detailed in the previously mentioned facts.

90.     Plaintiff is informed and herein alleges, therefore, that her constructive discharge from her position as a Radiation Therapist was based upon her sex and the discriminatory belief by defendants that women with young children could not adequately perform their job responsibilities.  Such a discharge is in violation of California law under the FEHA.

91.     As a direct and proximate result of Defendants' violation of the FEHA prohibition against employment discrimination based upon sex, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

CASASLAWGROUP

1      92.    Pursuant to the FEHA, Plaintiff is also entitled to back pay, compensatory

2  damages, reasonable attorney's fees and costs and because of the severe oppression exhibited

3  toward Plaintiff, punitive damages in an amount to be shown at trial.

4                          **FOURTH CAUSE OF ACTION**

5                                **HARASSMENT**

6                          **(Against US Navy and CMS)**

7      93.    Plaintiff incorporates by this reference each and every allegation contained in

8  paragraphs 1 through 92 above as though set forth fully below.

9      94.    Sexual harassment is actionable under Title VII only if it is so severe or pervasive

10  as to alter the conditions of the victim's employment and create an abusive working environment.

11  *Clark County School Dist. v. Breeden,* 532 U.S. 268 (2001).

12      95.    As discussed above, Plaintiff suffered through numerous discriminatory acts by

13  defendants and disparate treatment by her immediate superiors, Division Heads and Chairman.

14  That discrimination and harassment resulted in her constructive discharge - a severe alteration or

15  change to the condition of her employment.

16      96.    Lt. Ozeroglu's opinions regarding women working in his department were well

17  known throughout the department as detailed in his admission on April 30, 2007.  He continually

18  harassed Plaintiff by issuing disparaging remarks about her, heightened her sense of anxiety at

19  work by informing others of personal issues such as her citizenship status, continually threatening

20  her with termination for non-performance based issues and constantly subjected her to differential

21  increased supervision and scrutiny all of which created an abusive working environment for

22  Plaintiff.

23      97.    Lt. Ozeroglu's superiors in the US Navy were well aware of Lt. Ozeroglu's

24  comments and his past and current treatment of his subordinates.  His actions were condoned by

25  the US Navy through the action and/or inaction of Dr. Chung and Dr. Inouye who each repeatedly

26  backed or ignored the harassment perpetrated by Lt. Ozeroglu against Plaintiff.  These acts by the

27  US Navy further created the abusive working environment for Plaintiff.

28  ///

CASASLAWGROUP

98.   Likewise, CMS failed to take prompt remedial action when they became aware of the harassment endured by Plaintiff on July 10, 2007.  Plaintiff even requested that Simmons send a CMS employee to investigate her allegations but her request was denied and she was given instead, illusory promises of an "investigation" in an attempt to appease her concerns.

99.   Plaintiff's resignation as a radiation therapist from NMCSD was a direct and proximate result of all defendants harassment and hostile work environment.  Defendants have violated Title VII's prohibition against employment harassment based upon sex.  Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

100.   Pursuant to Title VII, Plaintiff is also entitled to back pay, compensatory damages, reasonable attorney's fees and costs and because of the severe oppression exhibited toward Plaintiff, punitive damages in an amount to be shown at trial.

### FIFTH CAUSE OF ACTION

### HARASSMENT – FEHA

### (Against US Navy and CMS)

101.   Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 100 above as though set forth fully below.

102.   Under the FEHA in California Government Code section 12940 (j) it makes clear that it is an unlawful employment practice to "harass an employee or a person providing services pursuant to a contract."  That code section also states:  "An entity shall take all reasonable steps to prevent harassment from occurring."

103.   As discussed above, the US Navy and CMS permitted its employers and in some cases superiors, to affirmatively engage in harassment of the Plaintiff which lead to a hostile work environment from which Plaintiff's only recourse was to leave and resign her position as a Radiation Therapist.  Such actions by the Defendants are actionable under California State law as established by the FEHA.

///

///

104. As a direct and proximate result of Defendants' violation of the FEHA's prohibition against employment harassment based upon sex, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

105. Pursuant to the FEHA, Plaintiff is also entitled to back pay, compensatory damages, reasonable attorney's fees and costs and because of the severe oppression exhibited toward Plaintiff, punitive damages in an amount to be shown at trial.

## SIXTH CAUSE OF ACTION

### HARASSMENT – FEHA

### (Against Lt. Ozeroglu)

106. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 105 above as though set forth fully below.

107. Under the FEHA, the harasser is also personally liable for his acts toward the victim. (California Government Code section 12940(j)(3).)

108. As described above, Lt. Ozeroglu repeatedly engaged in harassing acts toward Plaintiff such that Plaintiff was constructively discharged. He created a work environment so hostile that after months of such behavior, he was "reprimanded" by Dr. Inouye and ordered removed from direct supervision of Plaintiff and her co-workers. His disparate treatment of the women with young children included unwarranted, increased supervision and scrutiny of the women which eventually lead to their resignations. He used derogatory language around the department when talking to others about Plaintiff, Gardner and Almirol. He repeatedly threatened to terminate Plaintiff for non-performance related issues. He revealed personal information of Plaintiff to various personnel who had no reason to know about Plaintiff's confidential personal information. He attempted to bring an unqualified, unlicensed and untrained male with no experience, to act as Chief Radiation Therapist to the women Radiation Therapists, including Plaintiff.

///

///

CASASLAWGROUP

109.    As a direct and proximate result of Lt. Ozeroglu's violation of the FEHA's prohibition against employment harassment based upon sex, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

110.    Pursuant to the FEHA, Plaintiff is also entitled to back pay, compensatory damages, reasonable attorney's fees and costs and because of the severe oppression exhibited toward Plaintiff, punitive damages from this defendant, in an amount to be shown at trial.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against US Navy and CMS)

111.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 110 above as though set forth fully below.

112.    Plaintiff is informed and herein believes that Defendants US Navy and CMS' conduct toward and treatment of Plaintiff as described above, was outrageous, cruel and beyond the boundaries of decency.  Defendants' conduct toward Plaintiff, as described above, included the acts of referring to her as a "f***ing ho," threatening her with termination for reporting any of the sex based discrimination or harassment, violations of her personal and confidential information, subjection to increased supervision and scrutiny, a failure to address any of the issues raised by Plaintiff, and a failure to investigate and protect Plaintiff from discrimination. Such conduct was outrageous, cruel and beyond the boundaries of decency.

113.    Plaintiff believes that Defendant US Navy intentionally engaged in these series of outrageous events in order to make Plaintiff's working conditions such that she could not endure and would eventually lead to her resignation from her position.  US Navy acted with complete disregard for the emotional distress caused to Plaintiff.

114.    Plaintiff believes that Defendant, CMS intentionally engaged a series of outrageous acts toward Plaintiff in order to maintain a relationship with US Navy whereby they could continue to supply personnel to the NMCSD.  CMS acted with complete disregard for the emotional distress caused to Plaintiff.

- 21 -
Complaint

CASASLAWGROUP

115.   Plaintiff herein alleges that as a result of Defendants US Navy and CMS' intentional actions, Plaintiff has been subjected to extreme mental and emotional distress during her Three (3) years of employment with CMS and in the months after her constructive discharge, during the "investigation."

116.   As a direct and proximate result of Defendants' outrageous conduct, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION

### (Against US Navy)

117.   Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 116 above as though set forth fully below.

118.   Plaintiff endured sex-based discrimination and harassment at the hands of her direct supervisor (and others) during her employment at the NMCSD Radiology Department as detailed above.  These acts were not only known by the US Navy, but were condoned by the US Navy.  As such, little supervision was in place to protect Plaintiff from the outrageous acts by Lt. Ozeroglu.  Plaintiff is informed and believes that the US Navy was aware of Lt. Ozeroglu's past history with women in the workplace but chose to disregard that history and placed him in the supervisory role over Plaintiff.  Further, Lt. Ozeroglu was reprimanded by Dr. Inouye and "reassigned" away from a supervisory role over Plaintiff.  That "reassignment" never happened and he was still her Contract Supervisor when she was constructively discharged some Three (3) months later.

119.   Dr. Chung and Dr. Inouye had opportunities to investigate and take remedial measures to bring an end to the sex based discrimination in the department, but each failed.  Dr. Chung, on several occasions, actually engaged in the very behavior complained of by Plaintiff and Dr. Inouye failed to follow through with his investigation's recommendations.

///

///

CASASLAWGROUP

120.    As a direct and proximate result of the US Navy's negligent supervision of its employees, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

## NINTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

### (Against US Navy and CMS)

121.    Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 120 above as though set forth fully below.

122.    Defendant's actions hereinabove, constitute sex based discrimination and harassment and her constructive discharge, which rises to wrongful termination, is in violation of public policy as described in the FEHA.  Such termination is against public policy designed to protect employees from such abuse.

123.    As a direct and proximate result of Defendants' wrongful termination in violation of public policy, Plaintiff has suffered damages in the form of lost wages and other employment benefits, along with severe emotional and physical distress in an amount to be shown at trial.

124.    Defendants acted with the intent of causing Plaintiff to suffer financial loss and severe emotional and physical distress and therein acted with oppression and malice, justifying an award of exemplary and punitive damages.

///
///
///
///
///
///
///
///
///
///


CASASLAWGROUP

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allison Dernbach prays for judgment against Defendants

and Does 1 through 10 as follows:

1. For actual damages plus interest at the maximum rate allowable by law according to proof at trial;

2. For compensatory damages plus interest at the maximum rate allowable by law according to proof at trial;

3. For an award of punitive and exemplary damages according to proof at trial;

4. For attorney fees and costs of suit under any applicable statutory and contractual basis; and

5. For any other and further relief as the Court may deem just and proper.

Dated:  8-18-08

Respectfully submitted,

CASAS LAW GROUP, P.C.

By: Joseph N. Casas/Tamara M. Craft/ J. Scott Schaller
Attorneys for Plaintiff Allison J. Dernbach

CASASLAWGROUP

**EXHIBIT 1**

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Ms. Allison J. Dernbach | From: | San Diego Local Office |
|---|---|---|---|
| | 3663 Florida Street | | 401 B Street |
| | San Diego, CA 92104 | | Suite 510 |
| | | | San Diego, CA 92101 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2008-00444 | Richard L. Williams, Investigator | (619) 557-7280 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____         5/16/2008
Raul G. Green,                           _____
Acting Director                          *(Date Mailed)*

Enclosures(s)

cc:     Mr. Sy Simmons
        Human Resources Manager
        CHEROKEE MEDICAL SERVICES
        18945 FM Suite 115
        Garden Ridge, TX 78266



Enclosure with EEOC
Form 161-B (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02** – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

STATE OF CALIFORNIA – State and Consumer Services Agency                                                                    ARNOLD SCHWARZENEGGER, Governor

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

SEE ADDRESS CHECKED BELOW)

TY # (800) 700-2320

CHEROKEE MEDICAL SERVICES
18945 FM Suite 115
Garden Ridge, TX 78266

**EEOC Number:** 488-2008-00444
Ms. Allison J. Dernbach vs. CHEROKEE MEDICAL
SERVICES

**Date:** May 16, 2008

☐ **H** 4800 Stockdale Hwy., Suite 215
Bakersfield, CA 93309
(661) 395-2729

Ms. Allison J. Dernbach
3663 Florida St.
San Diego, CA 92104

☐ **C** 1320 E. Shaw Avenue, Suite 150
Fresno, CA 93710
(559) 244-4760

☐ **R/S/T** 611 West Sixth Street, Suite 1500
Los Angeles, CA 90017
(213) 439-6799

☐ **M** 1515 Clay Street, Suite 701
Oakland, CA 94612
(510) 622-2941

☐ **E** 2000 "O" Street, Suite 120
Sacramento, CA 95814
(916) 445-5523

☐ **D** 1350 Front Street, Suite 3005
San Diego, CA 92101
(619) 645-2681

☐ **A** San Francisco District Office
1515 Clay Street, Suite 701
Oakland, CA 94612
(510) 622-2973

☐ **G** 2570 North First Street, Suite 480
San Jose, CA 95131
(408) 325-0344

☐ **K** 2101 East Fourth Street, Suite 255-B
Santa Ana, CA 92705
(714) 558-4266

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred to the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

<u>No response to the DFEH is required by the respondent.</u>

The EEOC will be responsible for the processing of this complaint. DFEH will not be conducting an investigation into this matter. EEOC should be contacted directly for any discussion of the charge. DFEH is closing its case on the basis of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-sue notice. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior or Justice Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed. Questions about the right to file under federal law should be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint is filed.

<u>Remember:</u> This Right-To-Sue Notice allows you to file a private lawsuit in State court.

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

DFEH-200-02 (11/07)

**EXHIBIT 3**





**Naval Medical Center San Diego**
Division of Radiation Oncology
34800 Bob Wilson Drive, Suite 14
San Diego CA 92134-1014
(619) 532-7274      Fax (619) 532-8178

Thomas S. Chung, M.D.     Inouye, Warren, M.D.     Brian D. Lawenda, M.D.     Richard L. LaFontaine, Ph.D
LCDR, MC, USN            CDR, MC, USN             LCDR, MC, USN             CAPT, MSC, USN (Ret)

April 30, 2007

## INFORMAL RESOLUTION OF GRIEVANCE

On 25 Apr 07, it was brought to my attention by two radiation therapists, Allison Dernbach & Julie Gardner, that LT M. Ozeroglu had been heard using derogatory and inflammatory comments in reference to them. I approached LT Ozeroglu with this allegation. He admits that although he has never said such comments directly to these personnel, he has made inappropriate comments in conversation with others or just speaking out in the open. LT Ozeroglu was counseled that inflammatory, profane or derogatory remarks are not appropriate in the work place, regardless of whether the remarks are made in closed conversation. LT Ozeroglu was also made aware of the potential harm and damage caused when so called "harmless" remarks are stated out in the open. After discussion with both parties I have recommended the following action:

1) LT Ozeroglu will apologize for making such comments regardless of whether the intent was not meant to be personal.

2) As Department Chairman, I will take over as the Clinical Director of Radiation Oncology with duties including making both long term & day-to day clinical policy as well as providing direct guidance to all division personnel while LT Ozeroglu's direct clinical supervisory role will be diminished with regard to civilian personnel.

3) LT Ozeroglu will continue his duties with regard to Radiation Therapy Physic and Radiation Oncology administration.

4) LT Ozeroglu promises to stop his use of inflammatory and derogatory comments and understands that future infractions will lead to dismissal of duties in Radiation Oncology.

W. Inouye
CDR MC USN
Chairman, Dept. of Radiology

The following personnel were present and agree to these recommendations:

Allison Dernbach      Julie Gardner      Regina Almirol      LT M. Ozeroglu

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Rogers
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Casas Law Group, 2323 Broadway, Ste. 202,
San Diego, CA  92102

Attorneys (If Known)  '08 CV 1517 L POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☒ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §2000e ; 42 U.S.C. 12101; 42 U.S.C. §1981a ;
Brief description of cause:
Sex discrimination and harassment in employment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  8-18-08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  154183   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JAC  8/18/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 154183    — TC
* * C O P Y * *
August 18, 2008
16:12:46**

**Civ Fil Non-Pris**
USAO #.: 08CV1517
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC4155


**Total—> $350.00**


FROM: CIVIL FILING 08CV1517